**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEST PALM BEACH FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HASBRO, INC., RICHARD STODDART, CHRISTIAN COCKS, DEBORAH THOMAS, GINA GOETTER, and ERIC NYMAN,<br><br>    Defendants. | Case No. 24-cv-8633<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff West Palm Beach Firefighters' Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Hasbro, Inc. ("Hasbro" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Hasbro; and (d) other public information regarding the Company.

<u>**INTRODUCTION**</u>

1.    Plaintiff brings this securities class action on behalf of all persons or entities that purchased Hasbro's common stock between February 7, 2022, and October 25, 2023, inclusive (the "Class Period").

2.    The claims asserted herein are alleged against Hasbro and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the

Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

3.    Hasbro is a leading toy, game and entertainment company with global reach. During the Class Period, Hasbro sold a broad selection of consumer products from toys, games, apparel, music, publishing to film, television, animation, and other digital content for Hasbro's iconic brands including: Dungeons & Dragons, Magic: The Gathering, Hasbro Gaming, NERF, Transformers, Play-Doh, G.I. Joe, Monopoly, My Little Pony, and Peppa Pig.

4.    During the early stages of the COVID pandemic, prior to the start of the Class Period, Hasbro faced an increase in demand as families locked down in their homes, and global supply chain disruptions impacted numerous industries. In response, Hasbro overpurchased inventory to ensure that it could meet demand. As Defendant Thomas explained to investors on July 26, 2021, "We've increased retail inventory in the places where we couldn't have inventory a year ago. We just couldn't get it and we couldn't ship it, so retailers were selling out of everything."

5.    When the Class Period began, Defendants represented to investors that Hasbro's inventory was of a high quality and that the Company was appropriately building up its inventory balances to mitigate supply chain risk and meet consumer demand, especially for the 2022 holiday season. For example, on February 7, 2022, Defendant Thomas claimed that "The inventory we had at year-end is of very high quality." Throughout the Class Period, Defendants represented that the rising inventory levels reported in the Company's periodic financial reports filed with the SEC during the Class Period reflected outstanding and anticipated demand, rather than excess supply that outpaced waning demand.

6.     Defendants' Class Period representations that Hasbro's inventories were of high quality and at appropriate levels were false.  In truth, Defendants knew that Hasbro had overpurchased inventory to an extent that significantly outpaced customer demand.

7.     The truth began to emerge on January 26, 2023, when the Company previewed its fourth quarter results for fiscal year 2022.  Hasbro, having repeatedly touted the apparent strength of the 2022 holiday season, now admitted that revenue would contract by 17% year-over-year.  To combat weakening sales, Hasbro announced it would be laying off 15% of its global work force, and at the same time disclosed the immediate departure of its COO, Defendant Nyman.

8.     As a result of these disclosures, the price of Hasbro common stock declined by $5.17, or 8.1%, from a closing price of $63.78 per share on January 26, 2023 to a closing price of $58.61 per share on January 27, 2023.

9.     At the same time, however, Hasbro made false, reassuring statements to investors concerning the extent of the inventory buildup.  For example, on April 27, 2023, Defendant Cocks claimed that Hasbro had made "good progress on reducing retailer inventories and are on track for healthy improvements in our owned inventory."

10.     Then, on October 26, before the market opened, Hasbro shocked investors when it announced its financial results for its fiscal year 2023 third quarter, and disclosed an 18% decline in Consumer Product revenues year-over-year, along with a significant reduction in guidance for the remainder of the year.  In the attendant earnings call, Defendant Goetter further revealed that the Company was forecasting "$50-ish million of onetime cost" that was to be spent on "mov[ing] through inventory at the retailer level, extra marketing to move through the inventory, [and] extra obsolescence cost" in its Consumer Products segment.

11.     As a result of these disclosures, Hasbro's stock price declined by $6.38 per share, or 11.7%, from a closing price of $54.75 per share on October 25, 2023, to a closing price of $48.37 per share on October 26, 2023, erasing $831 million in shareholder value.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's shares alleged herein, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the acts and transactions giving rise to the violations of law complained of occurred in part in this District, including the dissemination of false and misleading statements into this District.  Habro's common stock trades on the NASDAQ, which is headquartered in this District.

16.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.     Plaintiff

17.     Plaintiff is a benefit pension plan based in West Palm Beach, Florida, that provides pension services and benefits to firefighters in the West Palm Beach community.  As indicated in

the certification submitted herewith, Plaintiff purchased Hasbro common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the securities laws alleged herein.

**B.    Defendants**

18.    Defendant Hasbro is a toy, game and entertainment company, that makes popular toys and games like Monopoly, Transformers, and Nerf.  It also produces entertainment content, including movies and TV shows, and own Wizards of the Coast, known for Magic: The Gathering and Dungeons & Dragons.  Hasbro common stock trades on NASDAQ under the ticker symbol "HAS."

19.    Defendant Richard Stoddart ("Stoddart") is the Chair of Hasbro's Board of Directors.  He has held this position since February 25, 2022.  He also acted as Hasbro's Interim Chief Executive Officer ("CEO") between October 12, 2021, and February 25, 2022.  Stoddart made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

20.    Defendant Christian Cocks ("Cocks") is Hasbro's CEO.  He has held this position since February 25, 2022.  Cocks made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

21.    Defendant Deborah Thomas ("Thomas") was Habro's Chief Financial Officer ("CFO") between May 21, 2009, and May 18, 2023.  Thomas made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

22.    Defendant Gina Goetter ("Goetter") is Hasbro's CFO.  She has held this position since May 18, 2023.  Goetter made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

23.     Defendant Eric Nyman ("Nyman") was Hasbro's Chief Operating Officer ("COO") between February 25, 2022, and March 31, 2023.  Nyman made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

24.     Defendants Stoddart, Cocks, Thomas, Goetter, and Nyman are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Hasbro's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  The Individual Defendants were provided copies of the Company's reports and press releases alleged in this complaint to be misleading before, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their position and access to material non-public information available to them, the Individual Defendants knew that the adverse facts and omissions specified in this complaint had not been disclosed to, and were being concealed from, the public, and that positive representations and omissions which were being made were then materially false and misleading.

## BACKGROUND

25.     Hasbro is multinational toy, game and entertainment company that is incorporated in Rhode Island and has its principal place of business in Pawtucket, Rhode Island.  During the Class Period, Hasbro sold a broad selection of consumer products from toys, games, apparel, music, publishing to film, television, animation, and other digital content for Hasbro's iconic brands.  The Company's principal operating segments are Consumer Products, Wizards of the Coast & Digital Gaming, and Entertainment.  The Consumer Products segment "[e]ngages in the sourcing, marketing and sales of toy and game products," and contributed approximately 62% of the Company's net revenues in 2021.

26.     During the early stages of the COVID pandemic, prior to the start of the Class Period, Hasbro faced an increase in demand as families locked down in their homes, and global supply chain disruptions impacted numerous industries. In response, Hasbro overpurchased inventory to avoid the out-of-stock conditions.  As Defendant Thomas explained to investors on July 26, 2021, "We've increased retail inventory in the places where we couldn't have inventory a year ago.  We just couldn't get it and we couldn't ship it, so retailers were selling out of everything."

27.     Throughout the Class Period, investors were highly focused on Hasbro's inventory levels and what those inventory levels indicated about present and future demand.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

28.     The Class Period begins on February 7, 2022, when Defendants released Hasbro's results for the fourth quarter of 2021 and held an earnings call to discuss these results with investors.  During that meeting, Defendant Thomas claimed that "[t]he inventory we had at year-end is of very high quality," and the Company's "aged inventory is well below historical levels." She also stated that the higher inventory level "reflects a significant increase in the amount of inventory in transit as lead times from China have increased about three times on average." When asked by analysts about the inventory situation, Thomas explained that the higher inventory levels were "really because of inventory in transit and the input and freight costs that are capitalized in that inventory.  Now the good part is what's in transit is our new spring releases for MAGIC and for our Consumer Products business.  So it's an excellent quality and it is being slightly impacted though by those higher input costs as we think about inventory."

29.     In the accompanying Form 10K that the Company filed on February 23, 2022, Hasbro repeated this sentiment, stating that "[I]nventories increased 40% in 2021 compared to

2020 reflecting increased lead-times from supply chain disruptions, as well as higher freight-in costs." Hasbro also framed the buildup of inventory as a cautionary measure to avoid supply chain distributions, stating in the Form 10K that "we believe the manufacturing capacity of our third-party manufacturers, as well as the supply of components, accessories and completed products which we purchase from unaffiliated manufacturers, are adequate to meet the anticipated demand in 2022 for our products."

30.     On April 19, 2022, Defendants announced Hasbro's fiscal year 2022 first quarter results and held a related earnings call.  In the press release, the Company commented that "While inventory was of high quality, general supply chain disruptions caused longer in transit times, and earlier purchasing to mitigate out-of-stock situations, lead to an increase in inventory." During the earnings call, Defendant Thomas claimed that to "improve product in stocks this holiday season versus last, we're advancing deliveries of key items in our owned inventory so that we can ensure it's on hand."

31.     In addition, during the April 19, 2022 earnings call, Defendant Nyman commented that "our Hasbro inventories are in good shape" and "[o]ur retail inventories are in good shape as well." He also claimed that "[q]uality is good," and that "knowing that we're in pretty good shape there, we feel at this point pretty good . . . about our inventories going into the back half." Nyman also represented that because of big entertainment releases that the Company was expecting leading into 2023, the "inventory buildup" meant that the Company was "ready for that." In response to an analyst's question about retail inventory levels, Defendant Cocks stated, "we feel pretty good about where we're going into for Q2, Q3, and Q4, which is why we're maintaining our guidance" and "we think that inventory is filled with great products."

32.    On July 19, 2022, Defendants announced Hasbro's fiscal year 2022 second quarter results. This press release quotes Defendant Thomas as explaining that "In the first half of the year, we took significant steps to secure inventory to help ensure product availability for upcoming product launches, major entertainment releases and the holiday season." The release further claimed that "Inventory is of high quality and supply is well positioned to meet demand."

33.    Hasbro also held an earnings call for investors on July 19, 2022. During this call, Defendant Cocks commented that "While our inventory levels are up year-over-year at the end of Q2, the inventory is of high quality, positioning us to meet consumer demand and promote our new product innovation aggressively. For instance, our early read on our first of two Prime Days at Amazon last week is positive with consumer deal takeaway up 20% year-over-year. Our newest game announcement, Wordle: The Party Game, is off to a record start for gaming pre-orders. As such, we expect inventory by year-end to be approximately flat year-over-year and to see reductions in on-hand supply by the end of Q3." Defendant Cocks also stated that "we feel like that inventory is of very high quality and has a lot of upside potential for us in terms of POS."

34.    On this call, Defendant Thomas also reassured investors about Hasbro's inventory position, commenting that "we proactively managed our supply chain and inventory purchases to mitigate disruption. We're much better-positioned to meet demand this year versus last. This action resulted in higher than typical inventory levels at Hasbro for this time of the year. To avoid the out-of-stock positions of the last year holiday season due to supply chain disruptions, retailers also shifted some consumer product direct shipments into the second quarter from the third quarter. Both our inventory and that of retail is of extremely high quality." She further stated that "Based on our plan to drive point-of-sale growth in the second half of the year, we believe we will end the year with inventory levels similar to year-end 2021."

35.    On October 18, 2022, Defendants held Hasbro's fiscal year 2022 third quarter earnings call.  During the call, Defendant Thomas assured investors that "our inventory continues to be of high quality, but our goal is to work down the balance by year-end." When asked about the Company's inventory levels, Thomas replied that "retail inventory is up, as we said, at the end of the quarter, but it's of good quality and we have a lot of promotional activity planned for the fourth quarter. . . we're working with our retailers on promotional activity and much of it was setting for a lot of this new innovation that we're having in the fourth quarter."

36.    On the October 18, 2022, call Defendant Nyman also claimed that "we pride ourselves on making sure that we continue to stay ahead of our inventory situation." He also noted that "I expect Q4 to be in line with where we've been and we'll work through our inventory again to finish the year in that low- to mid-single digit area that we talked about, and that's what is built into our story that we've already discussed this morning."

37.    The statements set forth above in paragraphs 30-38 were materially false and misleading and failed to disclose material facts necessary to make those statements, in light of the circumstances under which they were made, not false and misleading.  Defendants' statements represented the quality of inventory and the appropriateness of the levels of inventories carried by Hasbro and its retailers compared to customer demand.  In truth, however, the Company had a significant buildup of inventory that it was struggling to manage and which far exceeded customer demand.  As a result, Defendants' statements about Hasbro's inventory, and what inventory levels reflected regarding demand, were materially false and misleading and/or lacked a reasonable basis.

## THE TRUTH EMERGES

38.    On January 26, 2023, after the market closed, Hasbro issued a press release previewing its fourth quarter results for fiscal year 2022.  The press release quoted Defendant Cocks revealing that "our Consumer Products business underperformed in the fourth quarter

against the backdrop of a challenging holiday consumer environment." The release also disclosed that forth quarter 2022 revenue had contracted by 17% year-over-year and that the Company was planning "leadership and organizational changes, including the elimination of approximately 15% of its global workforce this year." It also announced the departure of Defendant Nyman, stating that "As part of these organizational and commercial changes, Eric Nyman, president and chief operating officer, is departing Hasbro."

39.    Analysts were shocked by the announcement, with one analyst at Davidson commenting that "the magnitude of the shortfall is surprising" and UBS Research reported that Consumer Products was "significantly below expectations…with Hasbro likely working with retail partners to balance significant inventory overhang." Other analysts, including one from Goldman Sachs, questioned "how much of the revenue decline in the quarter was attributable to outsized promotional allowances and discounting to help clean the channel?"

40.    As a result of these disclosures, the price of Hasbro common stock declined by $5.17, or 8.1%, from a closing price of $63.78 per share on January 26, 2023 to a closing price of $58.61 per share on January 27, 2023.

41.    Defendants, however, continued to misrepresent and conceal the extent of its inventory buildup.  In Hasbro's February 16, 2023, earnings call to discuss the Company's forth quarter results for fiscal year 2022, Defendant Cocks claimed that "We made progress on both our owned and retailed inventory in the fourth quarter, but have more work to do." He also stated that "we see retail inventory not unhealthy but still having a little bit of an overhang given the slowing consumer demand that we saw in Q4." On this call, Defendant Thomas also reassured investors that inventory management was under control and factored into the financial guidance that Hasbro was providing to investors.  She stated that "We do have some additional inventory we'll be looking

at closing out over the course of this year that's built into our assumptions. We have that every year." And explained that "And our inventory build, if we look at it, a big piece of it was preparing for the early releases of MAGIC: THE GATHERING and making sure we have paper on stock to print because that was in shortage – short supply last year. So as we look at that, the closeouts that are in our owned inventory, we see selling those out at the right time for both us and for retailers to maximize the profit on that."

42.    On April 27, 2023, Hasbro announced its financial results for the first quarter of fiscal year 2023. The press release quoted Defendant Thomas claiming that "The year has started on plan as we reduce retail inventory levels and remain positioned to drive continued margin expansion." On the earnings call held that day, Defendant Cocks told investors that the Company had made "good progress on reducing retailer inventories and are on track for healthy improvements in our owned inventory in Q2 and Q3." He further stated that for "owned inventories, we made progress outside of Action Figures and Wizards in Q1, and we expect that to continue."

43.    On May 22, 2023, Defendant Cocks participated in a question-and-answer session with a J.P. Morgan analyst during the J.P. Morgan Global Technology, Media and Communications Conference. In response to a question about where the Company was "in terms of getting the channel clean," Defendant Cocks stated, in relevant part, that "we saw good progress in Q1, cleaning up our retailer inventories. And our inventories of retail were down 15% by the end of Q1. We think we'll be a fully clean level, mostly by the end of Q2. There might be a couple brands here or there, a couple of SKUs that we need to go into Q3 on. But if anything, our situation at retail right now is we have too little inventory rather than too much."

44.     On August 3, 2023, Defendants announced Hasbro's fiscal year 2023 second quarter results.  The press release announcing these results quotes Defendant Cocks as touting "a solid second quarter, with revenue ahead of our expectations, significant reduction of inventory, and meaningful progress toward our transformation and cost savings programs" Hasbro also held an earnings call for investors on August 3, 2023.  During this call, Defendant Cocks remarked on the Company's "much improved inventory levels," stating that "[o]ur inventories are greatly improved" and that "it's nice to have clean inventories and inventories reduced." He further commented that "we feel like our retailer inventory is at a pretty productive level."  Hasbro's new CFO, Defendant Goetter, also commented that "we made significant progress in lowering inventory levels."

45.     On September 6, 2023, Defendant Goetter participated in a question-and-answer session with a Goldman Sachs analyst during the Goldman Sachs Communacopia and Technology Conference.  When asked about inventory levels she responses that "we're down 16% per our own inventory, down about the same with the retail inventory, but within that, when you look at our Toy business, it was down about 24%.  And we said for the year, our goal is to bring our inventory levels down to 20%.  In terms of does that get us back to normal or healthy, it gets us pretty darn close."

46.     Then, on October 26, before the market opened, Hasbro announced its financial results for its fiscal year 2023 third quarter, and disclosed an 18% decline in Consumer Product revenues year-over-year, "driven by exited businesses, soft industry trends and prioritization of inventory management across both owned and retail inventory." Hasbro additionally revised its full year guidance for Consumer Product, disclosing that it now expected a revenue decline of 13% to 15% for the Company, compared to the previously forecast 3% to 6% decline.  It attributed this revision wholly to the Consumer Product segment.   In the attendant earnings call, Defendant

Goetter further revealed that the Company was forecasting "$50-ish million of onetime cost" that was to be spent on "mov[ing] through inventory at the retailer level, extra marketing to move through the inventory, [and] extra obsolescence cost" in its Consumer Products segment.

47.    As a result of these disclosures, Hasbro's stock price declined by $6.38 per share, or 11.7%, from a closing price of $54.75 per share on October 25, 2023, to a closing price of $48.37 per share on October 26, 2023.

## LOSS CAUSATION

48.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Hasbro common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when the truth concealed by Defendants' prior misrepresentations and omissions was disclosed to the market, including after the close of the market on January 26, 2023, and October 26, 2023, the price of Hasbro common stock fell precipitously, as the prior artificial inflation came out of the price over time.  As a result of their acquisition of Hasbro common stock during the Class Period—and Defendants' material misstatements and omissions— Plaintiff and other member of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Hasbro common stock during the Class Period.  Excluded from the Class are Defendants and their families, directors and officers of Hasbro and their families and affiliates.

50.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims as a class action will provide substantial benefits to

the parties and the Court.  As of the date of this Complaint, Hasbro had approximately 139 million shares of common stock outstanding, owned by hundreds or thousands of investors.

51.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether Defendants violated the Exchange Act;

(b)    Whether Defendants omitted and/or misrepresented material facts;

(c)    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)    Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)    Whether Defendants' conduct impacted the price of Hasbro's common stock;

(g)    Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)    The extent of damages sustained by Class members and the appropriate measure of damages.

52.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

53. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

55. Hasbro's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

56. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Hasbro who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made, nor were any of the projections or forecasts made by Defendant expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

57. At all relevant times, the market for Hasbro's common stock was an efficient market for the following reasons, among others:

   (a) Hasbro's common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

   (b) Hasbro filed periodic public reports with the SEC and NASDAQ;

(c)     Hasbro regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Hasbro was followed by several securities analysts employed by numerous major brokerage firms, who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

58.     As a result of the foregoing, the market for Hasbro's common stock promptly digested current information regarding Hasbro from all publicly available sources and reflected such information in the price of Hasbro's common stock.  Under these circumstances, all purchasers of Hasbro common stock during the Class Period suffered similar injury through their purchase of Hasbro common stock at artificially inflated prices and the presumption of reliance applies.

59.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose the true, material, negative financial impact of Hasbro's true inventory levels and their relationship with customer demand—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the

Company's inventory levels, and the impact that could have on the Company's near-term and long-term financial condition, that requirement is satisfied here.

## CAUSES OF ACTION

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5
Against All Defendants**

60.     Plaintiff repeats, incorporates, and realleges every allegation above as if fully set forth herein.

61.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which intended to and, throughout the Class Period, did (i) deceive the investing public, including Plaintiff and other Class Members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Hasbro common stock at artificially inflated prices.

62.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Hasbro common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

64.     During the Class Period, Defendants made the false statements specified above, which they knew to be or recklessly disregarded the truth that they were false and misleading in

that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.    Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Hasbro's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

66.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Hasbro's common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Hasbro common stock had been artificially inflated by Defendants' fraudulent course of conduct.

67.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

68.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## <u>COUNT II</u>

**For Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

69.    Plaintiff repeats, incorporates, and realleges every allegation above as if fully alleged in this count.

70.    The Individual Defendants acted as controlling persons of Hasbro within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level

positions, participation in and awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and intimate knowledge of the Company's actual performance, and their power to control public statements about Hasbro, the Individual Defendants had the power and ability to control the actions of Hasbro and its employees.  By reason of this conduct, the Individual Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 13, 2024                    Respectfully submitted,

*/s/Hannah Ross*
Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
   & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33315
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff West Palm
Beach Firefighters' Pension Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, David Merrell, on behalf of West Palm Beach Firefighters' Pension Fund ("West Palm Beach Firefighters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of West Palm Beach Firefighters. I have reviewed the complaint with West Palm Beach Firefighters' legal counsel. Based on legal counsel's knowledge and advice, West Palm Beach Firefighters has authorized the filing of the complaint.

2. West Palm Beach Firefighters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. West Palm Beach Firefighters is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. West Palm Beach Firefighters' transactions in the Hasbro, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. West Palm Beach Firefighters is currently serving as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

*SEB Investment Management AB v. Wells Fargo & Co.,*
No. 22-cv-3811 (N.D. Cal.)

6. West Palm Beach Firefighters has served as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

*West Palm Beach Firefighters' Pension Fund v. Werner,*
No. 24-cv-350 (D. Idaho)

7. West Palm Beach Firefighters will not accept any payment for serving as a representative party on behalf of the Class beyond West Palm Beach Firefighters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of November, 2024.

David Merrell, Chairman
*West Palm Beach Firefighters' Pension Fund*

**West Palm Beach Firefighters' Pension Fund**
**Transactions in Hasbro, Inc.**

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 7/19/2022 | 2406 | 79.8654 |
| Purchase | 7/20/2022 | 1202 | 81.1966 |
| Purchase | 7/22/2022 | 1137 | 81.8914 |
| Purchase | 8/9/2022 | 438 | 77.8931 |
| Purchase | 8/19/2022 | 552 | 82.2565 |
| Purchase | 10/4/2022 | 260 | 71.0998 |
| Purchase | 8/25/2023 | 1494 | 69.271 |
| Purchase | 8/28/2023 | 477 | 70.6189 |
| Purchase | 8/28/2023 | 617 | 69.7502 |
| Purchase | 8/29/2023 | 7 | 69.9927 |
| Purchase | 8/29/2023 | 318 | 70.9457 |
| Purchase | 9/5/2023 | 883 | 72.7148 |
| Purchase | 9/6/2023 | 507 | 73.0496 |
| Sale | 1/4/2023 | -1661 | 62.2925 |
| Sale | 1/13/2023 | -462 | 65.9166 |
| Sale | 2/21/2023 | -1263 | 58.6156 |
| Sale | 2/22/2023 | -649 | 57.2055 |
| Sale | 2/23/2023 | -1960 | 56.7511 |