UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
WEST PALM BEACH FIREFIGHTERS'                            :
PENSION FUND, *individually and on behalf*               :
*of all others similarly situated*,                      :
                                                         :                24-CV-8633 (VSB)
                                            Plaintiff,   :
                                                         :                **OPINION & ORDER**
                        - against -                      :
                                                         :
HASBRO, INC., *et al.*,                                  :
                                                         :
                                            Defendants.  :
                                                         :
-------------------------------------------------------- X

Appearances:

Jesse Lee Jensen
Hannah Elizabeth Ross
Bernstein Litowitz Berger & Grossmann LLP
New York, NY
*Counsel for Plaintiff West Palm Beach Firefighters' Pension Fund and Movant City Of Miami General Employees' & Sanitation Employees' Retirement Trust*

Radha Nagamani Raghavan
Berger Montague PC
New York, NY
*Counsel for Movant Philadelphia Asbestos Workers Pension & Health & Welfare Funds*

Thomas Livezey Laughlin, IV
Scott+Scott Attorneys at Law LLP
New York, NY
*Counsel for Movant City of Birmingham Retirement and Relief System*

Scott D. Musoff
Skadden, Arps, Slate, Meagher & Flom LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff West Palm Beach Firefighters' Pension Fund ("West Palm Beach Firefighters") brings this securities fraud class action lawsuit against Hasbro, Inc. ("Hasbro") and certain of its senior executives. Plaintiff alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well the corresponding SEC rule, 17 C.F.R. § 240.10b–5 ("Rule 10b-5"). (Doc. 1 ("Compl.") ¶ 10.)

Before me is an unopposed motion filed by Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami Retirement Trust") and West Palm Beach Firefighters pursuant to Section 21D(a)(3) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Doc. 20.) Miami Retirement Trust and West Palm Beach Firefighters seek (1) to be appointed lead plaintiff, and (2) approval of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel. Because Miami Retirement Trust and West Palm Beach Firefighters have the largest financial interest in the litigation and fulfill the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, Miami Retirement Trust and West Palm Beach Firefighters' motion to be appointed lead plaintiff and for approval of their selection of Bernstein Litowitz as lead counsel is GRANTED.

## I.    Factual and Procedural History[1]

### A.    *The Complaint*

On November 13, 2024, Plaintiff West Palm Beach Firefighters filed this putative class action complaint against Hasbro, as well as its Chair of the Board of Directors Richard Stoddart, Chief Executive Officer Christian Cocks, former Chief Financial Officer Deborah Thomas, Chief

---

[1] The facts in this Section are recited for background only and are not intended to and should not be viewed as findings of fact.

Financial Officer Gina Goetter, and Chief Operating Officer Eric Nyman (collectively, the "Individual Defendants"), alleging that Hasbro and Individual Defendants (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 by misleading investors about Hasbro's inventory. (*See* Compl.) Essentially, the Complaint alleges that Hasbro made misrepresentations and failed to disclose that both the quality and level of inventory that Hasbro and its retailers had were lower than represented. (*Id.* ¶ 37.) Hasbro's share prices fell after it issued a press release on January 26, 2023, regarding the fourth quarter results for fiscal year 2022. (*Id.* ¶¶ 38–40.) Hasbro made additional representations about its inventory, including in earnings calls, question-and-answer sessions, and press releases throughout 2023. (*Id.* ¶¶ 41–47.) Notably, Hasbro's share prices fell after it disclosed the finances regarding the third quarter results for fiscal year 2023, including revising its prior guidance to expect a revenue decline of its Consumer Product segment, on October 26, 2023. (*Id.* ¶¶ 46–47.)

The same day that Plaintiff West Palm Beach Firefighters filed its complaint, Bernstein Litowitz published a notice of the Complaint on *Business Wire* in accordance with the PSLRA, 15 U.S.C. § 78u–4(a)(3)(A)(i). (*See* Doc. 22-4.) The notice advised putative class members that they had until January 13, 2025—which is the first business day that is open 60 days from the publication date of November 13, 2024—to move the Court to be appointed lead plaintiff of the litigation. (*See id.* at 3.)

### B.    *Lead Plaintiff Motions*

On January 13, 2025, various parties filed three motions for appointment as lead plaintiff and approval of lead counsel. First, Philadelphia Asbestos Workers Pension & Health & Welfare Funds ("Philadelphia Asbestos Workers") moved for appointment as lead plaintiff and approval of Berger Montague PC as lead counsel. (Doc. 17.) Second, Miami Retirement Trust and West

Palm Beach Firefighters moved for appointment as lead plaintiff and approval of Bernstein Litowitz as lead counsel. (Doc. 20.) Third, Birmingham Retirement and Relief System moved for appointment as lead plaintiff and approval of Scott+Scott Attorneys at Law LLP as lead counsel. (Doc. 24.)

On January 27, 2025, certain parties filed responses to the motions for appointment as lead plaintiff and approval of lead counsel. Philadelphia Asbestos Workers filed a notice of non-opposition to Miami Retirement Trust and West Palm Beach Firefighters' motion for appointment as lead plaintiff. (Doc. 27.) Birmingham Retirement and Relief System filed a similar notice of non-opposition to Miami Retirement Trust and West Palm Beach Firefighters' motion. (Doc. 28.) Defendants also filed a response to the motions for appointment indicating that they generally "take no position on the motions for appointment as lead plaintiff and approval of lead counsel," except to note that they (1) request any appointment of lead plaintiff to be without prejudice and (2) object to Birmingham Retirement and Relief System's requests for document preservation and other methods of service. (Doc. 29.) Finally, Miami Retirement Trust and West Palm Beach Firefighters filed a memorandum of law in support of their now "unopposed motion for appointment as Lead Plaintiff and approval of their selection of Lead Counsel." (Doc. 30.)[2]

---

[2] Because the other movants have filed notices of non-opposition to the Unopposed Movants' motion, those other motions, (Doc. 17 (Philadelphia Asbestos Workers' motion), Doc. 24 (Birmingham Retirement and Relief System's motion)), are DENIED as moot.

4

## II. Discussion

### A. *Appointment of Lead Plaintiff*

#### 1. Applicable Law

The procedures set forth in the PSLRA govern the appointment of lead plaintiff in securities class actions. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 131 n.2 (2d Cir. 2008). The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co.*, No. 11-CV-7133, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (internal quotation marks omitted). Before the enactment of the PSLRA, "professional plaintiffs" overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*, No. 02-CV-1989, 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (internal quotation marks omitted). Consistent with this intent, under the PSLRA, courts are to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

The PSLRA provides that I "adopt a presumption that the most adequate plaintiff" is the "person or group of persons" who (a) have satisfied notice and filing requirements, (b) have "the largest financial interest in the relief sought by the class," and (c) "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc). I explain each of these requirements in turn.

5

a. Notice and Filing Requirements

The PSLRA requires that the plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service" within twenty days from the date that the complaint is filed. 15 U.S.C. § 77z-1(a)(3)(A)(i). The notice must inform the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." *Id*. Courts have "an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff . . . to come forward and take control of the litigation." *Armstrong v. Med. Props. Tr., Inc.*, No. 23-CV-8597, 2024 WL 3784445, at *2 (S.D.N.Y. Aug. 13, 2024) (internal quotation marks omitted).

b. Largest Financial Interest

i. *Aggregating Financial Interest*

Although the PSLRA permits a "person or group of persons" to be appointed as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(b)(iii)(I), it does not define "group of persons" or whether these persons must be related, *see In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The PSLRA does not, unfortunately, define what constitutes an appropriate candidate. . . . [T]he Act does not specify whether the 'members' must be related in some fashion in order to qualify as an appropriate lead plaintiff group."). Courts permit unrelated investors to move for appointment as lead plaintiff, and aggregate their financial interests, on a case-by-case basis. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). "Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class." *Armstrong*, 2024 WL 3784445, at *3

6

(citations omitted).  Courts consider factors such as: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese*, 589 F. Supp. 2d at 392.  Courts will reject a group of unrelated investors if the group "has not provided sufficient evidence that it will function cohesively, and has only provided 'conclusory assurances' that call into question whether it can manage th[e] litigation effectively." *Micholle v. Ophthotech Corp.*, No. 17-CV-1758, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (quoting *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011)).

ii. *Calculating Financial Interest*

When determining the party with the largest financial interest, courts in this District consider: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period[;] . . . (3) the net funds expended during the class period[;] . . . and (4) the approximate [financial] losses suffered." *Varghese*, 589 F. Supp. 2d at 395.  Of the four factors, financial loss is the most significant.  *See Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the *Lax*-style elements." (internal quotation marks and alterations omitted)).

Courts notably consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *5 & n.6 (S.D.N.Y. Mar. 2, 2007).  In securities fraud cases, courts must consider only those losses that a plaintiff incurred after a misrepresentation is revealed to the public.  *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N.Y.

7

2015); *see also Comverse*, 2007 WL 680779, at *5 ("[W]here (as here) it is clear from the face of the pleadings that most of [the movant's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage."). Any losses incurred based on "in-and-out" trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered. *See Topping*, 95 F. Supp. 3d at 618 ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include 'losses resulting from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.'" (alterations adopted) (quoting *Comverse*, 2007 WL 680779, at *4)). This is consistent with *Dura Pharmaceuticals, Inc. v. Broudo*, where the Supreme Court held that securities actions only provide recoveries for "economic losses that misrepresentations actually cause." 544 U.S. 336, 345 (2005). Thus, any losses resulting from sales of shares before a company's misconduct is revealed are not considered for the purpose of loss calculation "because those losses cannot be proximately linked to the misconduct at issue." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (quoting *Comverse*, 2007 WL 680779, at *4).

      c. <u>Rule 23</u>

  The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of class certification." *eSpeed*, 232 F.R.D. at 102.  The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements.  *See Varghese*, 589 F. Supp. 2d at 397.

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise."  *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (internal quotation marks omitted).

The adequacy requirement is satisfied where the proposed lead plaintiff "fairly and adequately protect[s] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In evaluating adequacy, courts have assessed factors such as:  (1) the size, available resources and experience of the proposed lead plaintiff[;] (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members."  *Blackmoss Invs., Inc. v. ACA Cap. Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (internal quotation marks omitted).

### 2. Application

#### a. Notice and Filing

The notice and filing in this case satisfy the PSLRA requirements.  (*See* Doc. 22-4.)  It was timely made, having been published on the same day of the filing of the complaint on November 13, 2024.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  The notice informs investors of the pendency of the lawsuit—including its case caption, the class period, and the fact that investors must file a motion to serve as lead plaintiff "no later than January 13, 2025."  (*Id.* at 3.)  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Miami Retirement Trust and West Palm Beach Firefighters timely

9

filed for appointment as lead plaintiff on January 13, 2025, (Doc. 20), and parties that filed competing motions seeking appointment as lead plaintiff have since filed notices of non-opposition to Miami Retirement Trust and West Palm Beach Firefighters' motion, (Docs. 27, 28). Miami Retirement Trust and West Palm Beach Firefighters' (collectively, "Unopposed Movants") motion is therefore now unopposed.

b. <u>Largest Financial Interest</u>

Unopposed Movants claim to have the largest financial interest in the action and claim a financial loss of $1,726,068 in connection with their Class Period[3] transactions in Hasbro shares. (Doc. 30 ("Unopposed Movants' Mem.") at 5–6.)  Unopposed Movants also note that Miami Retirement Trust alone "incurred a loss that is larger than the combined loss reported by the other movants." (*Id.* at 6.)  As noted, the parties that filed competing motions seeking appointment as lead plaintiff have since filed notices of non-opposition to Miami Retirement Trust and West Palm Beach Firefighters' motion. (Docs. 27, 28.)  Because no party filed an objection to Unopposed Movants' financial loss claims, I find that Unopposed Movants have satisfied this requirement.  *See Moore v. Checkpoint Therapeutics, Inc.*, No. 24-CV-2613, 2024 WL 3090623, at *2 (S.D.N.Y. June 21, 2024) ("assum[ing]" that investor with unopposed motion to serve as lead plaintiff had a "financial interest render[ing] him suitable to serve as lead plaintiff," and collecting similar cases).

c. <u>Otherwise Satisfying Rule 23</u>

Unopposed Movants satisfy the adequacy and typicality requirements of Rule 23. Because Unopposed Movants purchased Hasbro common stock during the Class Period, (Unopposed Movants' Mem. 7; Compl. ¶ 1), they have claims "aris[ing] from the same conduct

---

[3] The Complaint defines "Class Period" as between February 7, 2022 and October 25, 2023.  (Compl. ¶ 1.)

10

from which the other class members' claims and injuries arise," *Initial Pub. Offering*, 214 F.R.D. at 121 (internal quotation marks omitted).  Given their significant financial losses and their claim that they "comprise a small, cohesive group of institutional investors that are capable of supervising this litigation," (Unopposed Movants' Mem. 8), I find that Unopposed Movants will "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417–18 (S.D.N.Y. 2004).  No other movant has provided any proof that Unopposed Movants would not be able to "fairly and adequately protect the interests of the class" or are "subject to unique defenses that render such plaintiff[s] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Notably, two institutional investors, Miami Retirement Trust and West Palm Beach Firefighters, may serve collectively as lead plaintiff in this securities class action.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (allowing appointment of "members of the purported plaintiff class" as lead plaintiff); *see also Hansen v. Ferrellgas Partners, L.P.*, No. 16-CV-7840, 2017 WL 281742, at *3 (S.D.N.Y. Jan. 19, 2017) ("[A]s the statute makes clear, groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff." (internal quotation marks omitted and alterations adopted)).  The Unopposed Movants also describe their independent decision-making process to work together, including in conference calls "to discuss their leadership of this case to ensure that it will be litigated in the best interests of all Class Members." (Unopposed Movants' Mem. 8.)  Unopposed Movants also contend that there is no conflict between their interests and those of other class members.  (*Id.* at 9.)  I therefore find that Unopposed Movants satisfy the adequacy and typicality requirements of Rule 23.

Accordingly, I find that Unopposed Movants should serve collectively as lead plaintiff.

### B. *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Armstrong*, 2024 WL 3784445, at *5 (internal quotation marks omitted).

Unopposed Movants have selected Bernstein Litowitz as counsel. I have reviewed Unopposed Movants' filings in this case, as well as Bernstein Litowitz' firm resume, (Doc. 22-5), and I find that Bernstein Litowitz is highly experienced in securities litigation and is capable of adequately and effectively representing the class. Unopposed Movants' motion that Bernstein Litowitz be appointed lead counsel in this action is GRANTED.

### III. Conclusion

I find that Unopposed Movants collectively are the presumptive lead plaintiff and no other movant has rebutted that presumption. Moreover, Unopposed Movants have a substantial financial interest in the action, and meet the typicality and adequacy requirements of Rule 23. Therefore, Unopposed Movants' motion for appointment as lead plaintiff and for approval of lead counsel, (Doc. 20), is GRANTED.

The other movants' competing motions to be appointed lead plaintiff, (Docs. 17, 24), are DENIED as moot because they were effectively withdrawn by subsequent notices of non-opposition to the Unopposed Movants' motion.

The Clerk of Court is respectfully requested to terminate the pending motions at Documents 17, 20, and 24. Within fourteen (14) days of this Order, the parties shall file a proposed schedule for any answer or motion in response.

SO ORDERED.

Dated: August 29, 2025
     New York, New York

Vernon S. Broderick
United States District Judge